IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JEFFREY MARC COOPER,

    Plaintiff,

v.                                                                                                                No. 17-cv-0198 SMV

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security Administration,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 18] ("Motion"), filed on August 2, 2017. The Commissioner responded on September 27, 2017. [Doc. 20]. Plaintiff replied on October 25, 2017. [Doc. 21]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 9]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that Plaintiff fails to meet his burden as the movant to show that the Administrative Law Judge ("ALJ") did not apply the correct legal standards or that his decision was not supported by substantial evidence. Accordingly, the Motion will be denied and the Commissioner's final decision affirmed.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

## Background

Plaintiff is already receiving supplemental security income ("SSI") based on his disability. He filed his application for SSI in April of 2010. He submitted records from his treating psychologist, Dr. Reed, including a 2011 opinion that Plaintiff's functional limitations had been severe enough to meet a listing since 2008. Tr. 231–34; Tr. 232 ("As of 2008, he was not able to be competitively employed."). ALJ James A. Burke was persuaded by Dr. Reed's 2011 opinion and found Plaintiff disabled as of April 2010. Tr. 34. Claims for SSI cannot be granted prior to the application date, 20 C.F.R. § 416.501, so ALJ Burke did not consider whether Plaintiff became disabled prior to April of 2010.

Plaintiff filed another application for benefits in March of 2014, which is the subject of this appeal. *See* Tr. 21. He claimed that he actually became disabled in 1997, when he was 18 years old. *See id.* If he were able to establish his disability prior to turning 22 on January 18, 2001, he would be entitled to child insurance benefits ("CIB") on his father's earnings record. *See* 42 U.S.C. § 402(d)(1)(B); 20 C.F.R. § 404.350(a). If he were able to establish his disability prior the expiration of his own insured status on June 30, 2004, he would be entitled to disability insurance benefits ("DIB") on his own earnings record. Accordingly, with respect to the appeal at bar, the relevant time periods are prior to January 18, 2001 (for the CIB claim), and prior to Plaintiff's date last insured, June 30, 2004 (for the DIB claim). [Doc. 18] at 2; Tr. 24

## Medical and Other Evidence

Plaintiff submitted only a few pieces of evidence to support his March 2014 application. He submitted his treatment records from Dr. Reed, including Dr. Reed's 2011 opinion, Tr. 231–

34, and a few records dated August 5 and 11, 2004, about five weeks after his date last insured, Tr. 237–42.

Plaintiff submitted two letters from social workers at the University of Minnesota, where he was a student. Tr. 244, 247. One letter, dated November 20, 2002, indicated that the social worker had been providing therapy to Plaintiff for anxiety and depression. Tr. 247. The second letter, dated May 12, 2003, indicated that Plaintiff had a "recurrent medical condition" for which he had not been treatment compliant. Tr. 244. Both of these "to whom it may concern" letters requested accommodations for Plaintiff's medical conditions. Tr. 244, 227. Plaintiff also submitted a copy of business card for the university's disability specialist. Tr. 245–46. There is a note on the back of the card stating, "make appointment to see me the first week of the semester." The note is undated. *Id.*

Plaintiff was apparently admitted to Aurora Psychiatric Hospital for three days beginning December 27, 2003. Tr. 248. Plaintiff submitted only one page regarding this purported admission: a hand-written "continuing care plan," which appears to have been drafted at discharge on December 30, 2003. It notes that Plaintiff was prescribed Wellbutrin, but indicates no reason for admission or diagnosis. *Id.*

Lastly, Plaintiff submitted letters from himself and his mother. The letter from Plaintiff is undated but appears to have been drafted sometime after June of 2003.[3] The letter from Plaintiff's mother, Susan Cooper, recounts his troubles dating back to childhood. Tr. 226–28.

---

[3] The letter appears to be written to someone at the university asking that his Italian 1002 summer class be "cancelled and dropped from [his] record" due to depression and trouble finding the right medications. Tr. 255. There is a corresponding record from the university showing the Italian class was held between June and August of 2003. Tr. 243.

### Denial of the Instant Claims

The March 2014 application was denied initially and on reconsideration. *Id.* Plaintiff requested a hearing before an ALJ. *Id.* ALJ Burke held a hearing on June 16, 2015, in Santa Fe, New Mexico. Tr. 21, *see* Tr. 33. Plaintiff appeared with his attorney via videoconference from Albuquerque, New Mexico. Tr. 21, 31–42. However, the ALJ took no testimony from Plaintiff. The entirety of the hearing comprised argument of counsel and questioning by ALJ Burke. Tr. 31–42. ALJ Burke agreed to keep the record open for 30 days to allow counsel to submit additional evidence related to the relevant time periods (prior to January 18, 2001, for the CIB claim; and prior to Plaintiff's date last insured, June 30, 2004, for the DIB claim). Tr. 41.

The ALJ issued his unfavorable decision on December 10, 2015. Tr. 26. He found that Plaintiff met the insured status requirements through June 30, 2004. Tr. 24. At step one he found that Plaintiff had not engaged in substantial gainful activity since the onset date of his alleged disability. *Id.* Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id.* There he found that "[p]rior to [January 18, 2001,] the date [Plaintiff] attained age 22 and through [June 30, 2004,] his date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." *Id.* Therefore, the ALJ found that Plaintiff was not disabled as defined by the Act during the relevant time period, and he denied the claims. Tr. 24–26.

Plaintiff requested review from the Appeals Council, but that request was denied on December 15, 2016. Tr. 1. Plaintiff timely filed the instant action on February 9, 2017. [Doc. 1].

**Plaintiff fails to show reversible error
in the ALJ's interpretation of the evidence.**

Plaintiff argues that the ALJ erred in finding that there was inadequate evidence to support a finding that he had a medically determinable impairment during the relevant time period. Specifically, Plaintiff points to the August 5 and 11, 2004 records from Dr. Reed. Plaintiff argues, generally, that "medical evidence dated after the date last insured is not barred from consideration and should be considered because it may link with the claimant's pre-date last insured condition." [Doc. 18] at 6 (citing *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012)). Further, Plaintiff argues that even though the 2011 opinion of Dr. Reed (that Plaintiff was disabled) was generated ten years after the latest relevant time period, it did not necessarily preclude a finding that Plaintiff was disabled during the relevant time periods. [Doc. 21] at 2 (arguing against a "negative pregnant").

Here, the ALJ determined that, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment prior to Plaintiff's attaining age 22 and through the date last insured. Tr. 24. The ALJ found that no record provided "adequate evidence in support of any mental health diagnos[i]s prior to June 30, 2004." Tr. 26. This finding is supported by substantial evidence. The earliest medical records that could establish a diagnosis for Plaintiff are Dr. Reed's records from August 5 and 11, 2004. Tr. 237–42. Of course, these records are dated about five weeks after the latest relevant time period or about five weeks after Plaintiff's insured status expired. Based on the timing of the records, i.e., five weeks past the latest relevant time period, and based on their reflecting only mild symptoms,

the ALJ found that records were not adequate to establish a medically determinable impairment prior to June 30, 2004. Tr. 25–26.

Plaintiff argues that the date of the records does not *have* to control the outcome. Plaintiff argues that the ALJ *could* have given more weight to the records despite their date. At bottom, his argument is that Dr. Reed's August 2004 records could be extended back five weeks to apply to the latest relevant time period (prior to June 30, 2004). However, that is as far as Plaintiff develops the argument. Plaintiff does not argue that the records are substantively retrospective in any way. Nor does he point to anything—other than the temporal closeness to the date last insured—to connect the records to the relevant time periods. Plaintiff's lone argument is that the date alone does preclude finding in his favor. [Doc. 18] at 6; [Doc. 21] at 2. The problem for Plaintiff is that his argument does not address the standard before this Court. Here, Plaintiff must show that the ALJ erred—not that the ALJ could have decided things differently. Plaintiff fails to show that the ALJ committed reversible error in determining that there was not adequate evidence of a medically determinable impairment prior to June 30, 2004. This is so even considering that two records from Dr. Reed are dated about five weeks later. Remand is not warranted.

## Plaintiff fails to show reversible error in the lack of testimony by a medical advisor.

Plaintiff argues that the ALJ erred by failing to call a medical advisor ("MA") to assist the ALJ in inferring an onset date, pursuant to Social Security Ruling ("SSR") 83-20, 1983 SSR LEXIS 25. [Doc. 18] at 3, 6–7 (citing *Blea v. Barnhart*, 466 F.3d 903, 909-910 (10th Cir 2006)). As Plaintiff sees it, because his 2010 application for SSI was approved, the ALJ was required to

8

call an MA in deciding the 2014 application. [Doc. 21] at 2. Defendant disagrees. In relevant part, she points out that the outcome of one application does not bind the outcome of another application. [Doc. 20] at 10–11 (citing *Gonzales v. Colvin*, 515 F. App'x 716, 721 (10th Cir. 2013) (a separate application for a separate time period is not binding on other applications)). Defendant is correct.

In contrast to *Blea*, the most recent published case interpreting SSR 83-20, where there was only one application and one adjudication period at issue, here, there are two applications and two adjudication periods. In arguing that ALJ Burke was required to utilize SSR 83-20, Plaintiff conflates his two applications and their respective but discrete adjudication periods. There has been no determination of disability as to Plaintiff's second application (a requisite for triggering the utilization of SSR 83-20). The record indicates that the first application was approved based on evidence that is not relevant to the second application, *see* Tr. 34, because the evidence is from 2011—ten years after Plaintiff's date last insured. ALJ Burke was not bound by the outcome of the first application and, thus, was not required to apply SSR 83-20. *See Jaramillo v. Colvin*, 184 F. Supp. 3d 1086, 1092–93 (D.N.M. 2015) (holding that SSR 83-20 does not apply where there are two separate claims with two distinct adjudication periods). Plaintiff fails to show that the ALJ applied an incorrect legal standard. Remand is not warranted.

## Conclusion

Plaintiff fails to show that ALJ's findings are not supported by substantial evidence. He also fails to show that the ALJ failed to apply the correct legal standards. Accordingly, remand is not appropriate.

9

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 18] is **DENIED**. The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**